**Leonard L. BAKER, Plaintiff,**

v.

**The MICHIE COMPANY, Defendant.**

**Civ. A. No. 81–0065–C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

Feb. 3, 1982.

Robert F. Cochran, Jr., Charlottesville, Va., for plaintiff.

Brian J. Donato, Richard D. Holcomb, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, Judge.

Plaintiff, Leonard L. Baker, brings this action against his former employer, the Michie Company, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Plaintiff alleges that, while in the employment of the defendant, the defendant willfully miscalculated the number of hours registered on plaintiff's time card, so that said time card indicated that the plaintiff worked less time in excess of forty hours per week than he actually did. Plaintiff asserts that defendant's actions, in improperly calculating the number of hours he worked, caused plaintiff to be awarded less overtime pay than he was entitled to. As permitted in 29 U.S.C. § 216, plaintiff brings this action in his name and all those similarly situated who authorize suit on their behalf.

On August 13, 1981, the court entertained argument on behalf of both parties on plaintiff's motions for a preliminary injunction, expedited discovery, and court approval of notice and consent. Subsequent to argument, the court denied plaintiff's motion for a preliminary injunction, but withheld ruling on the remaining motions in order to allow counsel for both parties an opportunity to brief the issues.

Subsequent to oral argument, plaintiff withdrew his request that the defendant

produce for copying the time cards of all its employees for the three years prior to the institution of this action. Instead, plaintiff requests that defendant produce only the time cards of plaintiffs who join in this action. Finding no one to have filed a written consent to becoming a party plaintiff in this action, the court finds it unnecessary, at this time, to act on plaintiff's motion as amended.

The sole issue remaining for discussion at this time is whether the court should permit the circulation of a court approved notice to all potential class members informing them of their right to "opt in" to the action. Two Court of Appeals have addressed that issue in FLSA cases and have reached opposite results. Compare *Kinny Shoe Corporation v. Vorhes*, 564 F.2d 859 (9th Cir. 1977) (notice not permitted) [1] with *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2nd Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979) (notice permitted) [2]. To date, our own Court of Appeals has not been called on to decide the question.

*Kinney* and *Braunstein* agree that such notice is certainly not required by due process, because unnamed class members are not bound by any decision of the court. Thus, if a federal court is empowered to authorize notice under § 216(b), that power must be inferred from statutory interpretation. The language of the statute itself dealing with this question is as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Nowhere else in this voluminous and carefully thought-out Act is there anything on the subject of "opting in" which goes beyond the language above-quoted, or which may bear even tangentially on the question.

Reference to the legislative history, as cited in articles and opinions, likewise is barren of any treatment of the question at issue here.

The remedial nature of the Act, coupled with its extensive statement of Congressional findings and declaration of policy in § 202, gives every warrant to give to the Act a liberal construction.

Thus, given the considerations set out above, the first question becomes whether Congress intended to permit courts to fashion a mechanism for the giving of such notice, or whether Congress, by its silence on the subject, intended not to authorize such a fashioning by the court of such a mechanism.

Certainly, Congress must, in considering this point, be assumed to have known of the ancient and time-honored prohibition against the stirring up of litigation, referred to variously as a prohibition against barratry, champerty and maintenance, running and capping, etc. Knowing of that doctrine, any statutory change to it would be expected to be set out in detail by the legislature. The inference to be drawn is that Congress did not intend to abolish or modify that doctrine in adopting the Act. Again by inference, it may be that Congress felt that such evils as those sought to be controlled by the Act would be widely enough known in the employee group to permit each individual, potentially a plain-

1. *Kinney Shoe*, though decided under FLSA, reviewed in detail and specifically approved two District Court ADEA cases that had reached the same conclusion: *McGinley v. Burroughs Corporation*, 407 F.Supp. 903, 911 (E.D. Pa.1975) and *Roshto v. Chrysler Corporation*, 67 F.R.D. 28, 29–30 (E.D.La.1975).

2. *Braunstein* also marshalled District Court support for its decision: *Cantu v. Owatonna Canning Company*, No. 3–76 Civ. 374 (D.Minn. Apr. 12, 1978), *Lantz v. B–1202 Corporation*, 429 F.Supp. 421 (E.D.Mich.1977), and *Gomez v. Buckeye Sugar, Inc.*, 60 F.R.D. 106 (N.D.Ohio 1973). Another District Court decision, *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 619 (S.D. Tex.1979) has since come to the same conclusion.

tiff, to exercise his choice to "opt in" to the filed suit. This would be particularly applicable to the smaller employer, with a smaller number of relatively stable, long-time employees, such as in the case before the court.

In a case involving nothing else, it might be argued that the statutory language quoted above could as readily be construed to authorize the court to construct the notice mechanism as it could be construed not to do so. If that were the sole consideration, then a liberal construction would lead to the former conclusion, and not the latter. As is always the case, the court does not have before it an issue so pure and undefiled.

At least two factors must be placed in the equation setting out the "pure" alternatives. The first of these is Congressional awareness of the ancient and strong policy considerations barring the stirring up of litigation, mentioned *supra*. A second and more important factor is the existence of Rule 23, Fed.R.Civ.P., with its notice provisions. While that Rule came into its formal state at about the same time as the Act, the Rule simply codified in rule form, with some changes not relevant to this point, the existing practices in the federal courts in class action suits and in the giving of notice to members of the class in such actions. While Rule 23 deals with an "opt-out" procedure, certainly Congress was aware of procedures for the giving of notice to class members and could readily have constructed its own mechanism for the "opt-in" situation set out in the Act.

In the face of these considerations, the silence of Congress on the subject speaks its own message, that being that Congress did not intend a notice mechanism to be used with the Act. The cases discussed *ante* deal with the different approaches which have been made to this question.

In *Kinney Shoe*, the court barred notice under FLSA § 16(b), 29 U.S.C. § 216(b), reasoning that if notice is not required by due process, neither court nor plaintiff should be involved "in the stirring up of litigation in solicitation of claims". 564 F.2d at 863. That notion was rejected in *Braunstein* (600 F.2d at 336):

In our view, this holding [allowing notice] comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits.

*Braunstein* also referred to the recent trend in the law allowing attorney advertising as eroding the logic of the *Kinney Shoe* court's holding that permitting notice violated strong policy considerations against the solicitation of claims. Such reasoning is less than persuasive, however, except on a surface level. An analysis of this matter shows that the trend, if that is what it is, is severely circumscribed, allowing in general the advertising of availability of legal services, a far cry from the notice contended for in this case, a notice which zeroes in on the particular potential plaintiff in a particular litigation. Further, the notice, no matter how artfully drawn by counsel or the court or both, is bound to carry a strong intimation of an affirmative invitation to come join the current plaintiff in an assault on the defendant-employer. In short, this court does not read the relaxation of the stringencies of the rule against advertising to relax similarly the stringencies of the rule against stirring up of litigation.

The only guidance this court has found within the Fourth Circuit are two opinions by the Chief Judge of the Middle District of North Carolina, the Honorable Eugene A. Gordon: *Wagner v. Loew's Theaters, Inc.*, 76 F.R.D. 23 (M.D.N.C.1977); *Hill v. Western Electric Co.*, 76 F.R.D. 4 (M.D.N.C.1976). Although those actions were brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, Judge Gordon's holdings are applicable, since § 626(b) of the Age Discrimination in Employment Act adopts the class procedures of 29 U.S.C. § 216(b). Like the *Kinney Shoe* court, Chief Judge Gordon grounded his holdings in both on the propositions that due process considerations do not require notice under § 216(b), and the strong policy considerations of "the centuries old doctrine against the solicitation of claims". *Wagner, supra* at 25.

This court is in concurrence with the reasoning of both Chief Judge Gordon's

opinion in *Wagner* and the Ninth Circuit Court of Appeals holding in *Kinney Shoe.* In addition to the fact that notice is not required by due process in this action and that public policy strongly militates against barratrous claims, this court finds additional reasons for holding that a federal court does not possess the power to authorize the sending of notice to potential plaintiffs under § 216(b). The *Braunstein* court permitted notice to be sent to potential class members in order to avoid multiplicity of suits and to comport with the broad remedial purpose of the Act. Sending potential class members notice of their right to "opt in" does not, however, necessarily avoid the problem of multiplicity of suits. As has already been stated, no member of the class is either bound by the class action adjudication or barred from filing an individual claim within the statutory period unless he files with the court his written consent to join the present action. Unless strong problems with the statute of limitations are presented to the potential plaintiff receiving such a notice, that potential plaintiff may be far better advised to hold back, to see the outcome of the pending suit. In short, potential class members may decide not to join the initial action, preferring rather to allow other plaintiffs to bear the burden of the initial litigation and then to file suit if the prospects of success appear favorable.

Certainly, Congress was aware of Rule 23, Fed.R.Civ.P., and its attendant notice provisions, when it enacted the FLSA. Congress, however, in enacting § 216(b), chose neither to adopt the notice provisions of Rule 23, Fed.R.Civ.P., nor to fashion a separate notice provision for the implementation of § 216(b). Rather, Congress chose to remain silent. It would have been inordinately simple for Congress to have acted to provide a notice mechanism. One sentence inserted in the statutory language quoted *supra* could have created that mechanism very easily. The Congressional failure to do so leaves the plaintiff here in the position of asking this court, by court action alone, to amend the statute by adding that sentence, as an inferred sentence or thought to be included in the statute. More often than the courts would like, some particular court is called cn to interpret a legislative act, to find the intent of the act, or to determine by what mechanism the legislature expected the act to be implemented, and such pursuits are undertaken under the rules of strict construction, broad construction, etc., as may be appropriate. Every precedent authorizes and directs such a pursuit by a court faced with the problem, but a line must be drawn between construing an action in the context set out *supra* and amending an act, whether by addition or deletion. The latter alternative is clearly and properly reserved to the legislature. Conceding the broad remedial purposes of this Act, crossing that line is still not permitted to the courts, nor should it be.

For the above stated reasons, this Memorandum Opinion will be accompanied by an appropriate Order denying plaintiff's motion for court approval of notice and consent.