**Phyllis M. OWENS, Plaintiff,**

v.

**BETHLEHEM MINES CORPORATION, Defendant.**

**and**

**Richard CARRICO, Plaintiff,**

v.

**BETHLEHEM MINES CORPORATION, Defendant.**

**Civ. A. Nos. 83–2411, 84–2336.**

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 21, 1985.

J. Michael Ranson and Guy R. Bucci, Charleston, W.Va., for plaintiff.

Cheryl H. Wolfe, David D. Johnson, Larry W. Blalock and Roger A. Wolfe, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

These two cases come before the Court on a motion to consolidate. Of the two, only the *Owens* case was originally assigned to this Court. Because *Owens* predates *Carrico*,[1] however, the decision on whether to consolidate has been deferred to this Court. A somewhat related motion—a motion to certify a class—is pending in *Owens*. Both motions, albeit in different contexts, offer a common theme: expansion of the litigation. Hence, where pertinent, the Court has considered the arguments and information provided on one motion in examining the other. Finding the broader and more significant motion to certify a class to possess merit, the Court will devote greater attention to it.

### I. *Background*

#### A. *Owens.*

Phyllis Owens filed her Age Discrimination in Employment Act (ADEA) lawsuit on August 25, 1983. There have been numerous delays and continuances; although the case has been set for trial twice, there is currently no scheduled trial date. Aside from the motions to consolidate and certify a class, a motion to compel discovery is pending before the Court. The motion to compel hinges upon the scope which litigation is to take. All the motions are vigorously opposed by the Defendant.

Owens was employed by Bethlehem Mines Corporation at its Kayford-Boone-Nicholas Division in Charleston, West Virginia. She began work in the accounting department of that Division on December 28, 1966. On October 31, 1982, at the age of 48, she was discharged[2] from employ-

---

1. The *Carrico* case is currently assigned to Senior Judge Dennis R. Knapp of this District.

2. Bethlehem has objected to use of the terms "discharged," "terminated," and "fired" by Plaintiffs' counsel. It points out that the employees were laid-off and not terminated for cause. The Court considers the matter to be one of semantics. The Act, in any event, proscribes discrimination with respect to terms and conditions of employment. 29 U.S.C. § 623(d). Laid-off em-

ment as a result of a reduction in force conducted by Bethlehem throughout its West Virginia operations. Bethlehem operated two geographically distinct divisions in West Virginia. Circa 1982, the company decided to consolidate the two divisions, Kayford-Boone-Nicholas (Charleston) and Marion-Barbour (Bridgeport) into one, new division: the West Virginia Division, headquartered in Charleston. This reorganization, made necessary by financial setbacks, was accompanied by the reduction in force. Owens claims that this reduction in force was applied discriminatorily to her, she being the oldest employee in the accounting department.

**B. Carrico.**

The picture presented by Plaintiff Carrico is similar to that of Owens. He worked as a field engineer at Bethlehem's "Mine 21" in Summers County, West Virginia. The mine was under the control of the old Kayford-Boone-Nicholas Division. He began work there in 1967 and was discharged during the reduction in force in October of 1982. He too claims that he was discharged from his job because of his age, 55.

Carrico filed suit on August 23, 1984. Although a formal motion to certify has not been filed in his case, Carrico brought his complaint "on behalf of himself and all other employees similarly situated who wish to join this action."

## II. Discussion

**A. Class Certification.**

The authority for the class action sought by Plaintiff Owens can be found in 29

U.S.C. § 626(b).[3] That section of the Age Discrimination in Employment Act, by reference, adopts as an enforcement mechanism the class action provided under the Fair Labor Standards Act, as codified in 29 U.S.C. § 216(b). In pertinent part, that section provides as follows:

"An action to recover the liability prescribed in either of the preceeding sentences may be maintained against any employer ... in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

A fundamental difference between this class action and the more common class action under *Rule* 23 is readily apparent. Whereas a *Rule* 23 class action carries the requirement that class members who do not wish to be bound must "opt out,"[4] a Section 216 class action requires the converse; members of the putative class wishing to have the benefit of the litigation must "opt in." If a member does not choose to "opt in," he is not bound by the result and may bring a separate lawsuit.

Partly because of the above difference, the courts have come to agree that the discrete requirements of *Rule* 23 class action are not applicable to a Section 216(b) action.[5] The actions have been termed as

---

ployees may have been subjected to age discrimination. *Locascio v. Teletype Corp.,* 74 F.R.D. 108 (N.D.Ill.1977).

**3.** Although the Plaintiff Owens cited both Section 626 and *Rule* 23 in moving for class certification, the Court will treat the motion as one for certification under Section 626.

**4.** The court in *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir.1975), correctly points out that "class members may opt out only when the action is maintainable under subdivision (b)(3) of *Rule* 23. When either subdivision (b)(1) or (b)(2) applies, the rule does not allow a class member to avoid the effect of judgment by

disassociating himself from the suit." *Id.* at 288, n. 7.

**5.** See *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir.1975); *Behr v. Drake Hotel,* 586 F.Supp. 427 (N.D.Ill.1984); *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill.1982); *Locascio v. Teletype Corp.,* 74 F.R.D. 108 (N.D.Ill. 1977); *Wagner v. Loew's Theatres, Inc.,* 76 F.R.D. 23 (M.D.N.C.1977); *Hill v. Western Electric Co.,* 76 F.R.D. 4 (M.D.N.C.1976); *McGinley v. Burroughs Corp.,* 407 F.Supp. 903 (E.D.Pa. 1975); *Roshto v. Chrysler Corp.,* 67 F.R.D. 28 (E.D.La.1975); *Cooke v. Reynolds Metals Co.,* 65 F.R.D. 539 (E.D.Va.1975); *Hull v. Continental Oil Co.,* 58 F.R.D. 636 (S.D.Tex.1973).

"mutually exclusive and irreconcilable." *LaChapelle*, 513 F.2d at 289. Consequently, one district court has held that the "requirements of Fed.R.Civ.Proc. 23, specifically the showing that common questions of law or fact predominate (Rule 23(b)(3)) or the showing that injunctive relief for the whole class is appropriate (Rule 23(b)(2)), are irrelevant." *Locascio*, 74 F.R.D. at 111. Hence, in determining whether Owens may proceed by class action, the Court looks to the language of Section 216(b).

In contrast to *Rule* 23, Section 216(b) is not very detailed in its guidelines for permissible class actions. It merely states that a plaintiff can prosecute an action on behalf of himself "and other employees similarly situated." Hence, this Court's initial inquiry is whether there are other employees similarly situated to Owens. In its argument in opposition to the motion to consolidate, Bethlehem marshalls facts designed to show that Owens is not similarly situated to Carrico or, by implication, to other discharged workers.

The two former divisions of Bethlehem in West Virginia, as is the new division, were composed of six departments: accounting, industrial relations, safety, engineering, maintenance and preparation. Owens worked in the accounting department and Carrico worked in the engineering department. Bethlehem represents that the management structure of these six departments was peculiar in that the accounting department, although nominally part of the six-department division, reported directly to the accounting department at corporate headquarters in Bethlehem, Pennsylvania. Hence, in many important respects, Bethlehem contends, the accounting department did not fall under the control and direction of the division manager. Bethlehem has submitted the affidavits of Alex Slaman and Theodore Brisky to support its position. Slaman, supervisor of the West Vir-

ginia division's industrial relations department, verifies the organizational structure of Bethlehem's West Virginia operations. Brisky, manager of the West Virginia division, states that he did not have the control over the accounting department that he had over the other departments.

Owens has countered Bethlehem's position by arguing that a pattern and practice of age discrimination transcends any difference in departments and that Owens, Carrico and other older employees were affected by a company-wide policy of discrimination. Bethlehem, in turn, accuses the Plaintiffs' counsel of engaging in a fishing expedition in the hope that they will discover something to support their allegations. The Court, however, believes the Plaintiffs' class allegations to be more than mere hyperbole. The Plaintiffs allude to at least ten different employees who have taken steps to protest the consequences of the 1982 reduction in force. Moreover, at this point the Plaintiff does not have to prove that there was a class of employees which was subjected to discrimination by Bethlehem. This, of course, is the ultimate question. The Plaintiff only has to show that a group of employees similarly situated to one another are claiming discrimination.

In *King v. Ralston Purina Co.*, 97 F.R.D. 477 (W.D.N.C.1983), the question before the court was not class certification, but joinder.[6] Three plaintiffs seeking to join together in one suit alleged "that the discrimination against them was part of a *company-wide* 'pattern and practice of arbitrary, illegal age discrimination [by defendant] against its employees within the ... age bracket [protected by the ADEA].'" *Id.* at 478 (emphasis, brackets and elipses in original). The plaintiffs did not work in the same office or division, in fact, they were scattered about the defendant's organization. One had worked in South Georgia; another had worked in

---

**6.** A class action under *Rule* 23 has as one of its essential requirements that joinder of all plaintiffs be impractical. The class action under Section 216(b) represents the converse of this requirement in that plaintiffs are in effect required to join in the lawsuit. Although an ADEA class action is not expressly governed by the rule on joinder, Federal Rule of Civil Procedure 20, cases decided under the rule provide helpful guidance.

Eastern Pennsylvania; and the third had responsibilities extending over Georgia, Alabama and Florida.

The Defendant in *King* opposed the joinder of the three plaintiffs, claiming that there were no common questions of fact and labeling as "sheer fantasy" any allegation of a company-wide policy of age discrimination. The Court rejected the defendant's label, and observed the special circumstances which can surround discrimination based upon age:

> "The pattern and practice claim is far less fantastic than defendant says. Persons at corporate headquarters may well be shown to have formulated and implemented policies that affect employees throughout the entire ... operation. Victims of age discrimination may well be employees in positions of considerable responsibility who have served their employer long and well; discrimination against them is rarely based on the sort of animus that sometimes motivates race discrimination."

*Id.* at 480. (Citing Report of the Secretary of Labor, *The Older American Worker: Age Discrimination in Employment*, (1965), *reprinted in EEOC, Legislative History of the Age Discrimination in Employment Act*, 16–41 (1981)).

In *Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D.Ill.1982), the issue of what constitutes "similarly situated" plaintiffs arose in a different context. The question before the court was whether a notice should be sent to prospective class members. The defendant employer argued that no notice should be sent because to do so would invite employees with "diverse characteristics" to join the class. *Id.* at 443. It also argued that the current plaintiffs were not "similarly situated" because they "occupied varying positions in its corporate heirarchy, worked in different stores in various geographic locations, and alleged discriminatory actions occurring on 'vastly varying dates.'" *Id.* at 442. The court answered this argument of the defendant by pointing out that plaintiffs in a Section 216(b) class action "need not show that

their positions are identical, but only that they are similar." *Id.* at 443 (*quoting, Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D.Tex.1979)). The court held that because the plaintiffs

> "alleged a campaign of discrimination by Marshall Field, which transcends minor differences in their levels of management responsibility, geographic location, and dates of alleged discriminatory actions ... the focus of a trial in this case will be the allegation that the defendant orchestrated a 'campaign to rid [itself] of its older employees because of their age.'"

*Id.* (brackets in original).

In *Behr v. Drake Hotel*, 586 F.Supp. 427 (N.D.Ill.1984), the defendant employer argued that class notice was not appropriate "because plaintiffs have not shown that there exists a group of employees who are similarly situated to them." *Id.* at 430. It argued that the plaintiffs then in the suit were themselves "employed in different departments, in different positions and that each claim involve[d] unique facts." *Id.* To further its contentions, the defendant pointed out that completed discovery did not reveal any general discriminatory policies or practices. The *Behr* court rejected the defendant's arguments. Pointing out that the plaintiffs alleged that the defendant had engaged in a course of conduct, the court held that any adverse consequences individual employees suffered were relevant primarily in calculating damages.

The instant case can be distinguished from the holding in *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515 (N.D. Okla.1970). In that case, four employees sought to join together as plaintiffs in a single suit. The court held that joinder was improper; it found each of the alleged acts of discrimination to arise out of a separate and distinct transaction. Unlike the situation at Bethlehem in 1982, in *Smith* there was no company-wide, pervasive action on behalf of the employer, such as a reduction in force. The plaintiffs in *Smith*, employed in different divisions and departments, complained of acts ranging

from failure to promote to denial of opportunity to attend a blueprint school. Hence, there was no unifying element, such as available statistical evidence of a pattern of discrimination, which would have supported collectivization of the lawsuits.

In support of its contention that an allegation of company-wide discrimination will not support a class action or consolidation, Bethlehem cites the recent Supreme Court decision in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 146, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Bethlehem characterizes the *Falcon* Court as "emphatically [rejecting] the former across-the-board approach to class certification which theorized that alleged discrimination necessarily warrants class treatment and that alleged discrimination against the plaintiff warrants an inference of discrimination against others." This Court finds that the Defendant, in interpreting *Falcon*, paints with too broad a brush. First, the *Falcon* court was confronted with a *Rule* 23 class action, not a Section 216(b), ADEA class action. It has been noted that the requirements of *Rule* 23 are inapplicable to a Section 216(b) class. Second, the Supreme Court did not hold that an inference of class discrimination would never flow from one plaintiff's claim of discrimination. Rather, its concern lay with the *Rule* 23 requirement that the class representative's claim be typical of the class.[7] In *Falcon* the named plaintiff, a Mexican-American complained of being passed over for a promotion. In his suit he sought to represent not only employees who had not been fairly promoted, but also Mexican-Americans who had not been hired. The Supreme Court held that this across-the-board attack on

discriminatory employment policies by the plaintiff ran afoul of *Rule* 23's requirement of typicality. In the eyes of the court, the plaintiff, who had not been promoted, just did not have a claim typical to proposed class members who had not been hired.

■ Even if *Falcon* were applicable to Section 216(b) class actions, it would not prohibit class certification in the instant case. Unlike the plaintiff in *Falcon*, Owens does not seek to represent employees who were affected differently by any company-wide policy of discrimination. She claims that her situation is very similar to the unnamed others: they were all discharged during a reduction in force on account of their age.

Finally, the Court notes that the arguments of defense counsel that there was no confluence in personnel decision making between the accounting department and the other departments might be persuasive in a different setting. The facts here, however, are not those of a situation where one or more employees are complaining of disparate treatment by their supervisors in the normal course of employment. Rather, the situation here is of a systematic reduction of the work force. Such a decision obviously is made at a high level in the organization. It is the nature of a reduction in force which makes the broader class definition appropriate. Bethlehem cites the cases of *Roberts v. Marine Midland Bank*, 22 F.E.P. 326 (S.D.N.Y.1979) and *Santos v. Tom McAnn Shoe Co.*, 19 F.E.P. 1351 (W.D.Tex.1979) to support its argument that the accounting department was an autonomous unit with respect to employment

7. Specifically, the Court stated that: "[a]n individual litigant seeking to maintain a class action under Title VII must meet 'the prerequisites of numerosity, commonality, typicality, inadequacy of representation' specified in rule 23(a). These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiffs' claims.'" *Id.* at 156, 102 S.Ct. at 2369 (cites omitted).

In *Aguirre v. Bustos*, 89 F.R.D. 645 (D.N.M. 1981), the court made the following observation in regard to a Section 216(b) class representative:

"It should be noted that FLSA collective actions and rule 23 class actions are procedurally distinct. The standard by which the adequacy of a representative party is measured under rule 23 may not be the same as that applicable under 29 U.S.C. § 216(b). The fact that potential plaintiffs must 'opt in' under the FLSA procedure, for instance, may justify a lesser standard in such cases."
*Id.* at 647, n. 2.

decisions. In that neither case related to a company-wide reduction in force, the Court finds them to be unpersuasive.

### B. *Consolidation.*

The Court believes that the decision to certify the class effectively moots the motion to consolidate. Nevertheless, the Court will order the consolidation. The Owens and Carrico cases contain discovery of a general nature which will inure to the benefit of other plaintiffs who choose to opt into the litigation. The Court deems it appropriate that the litigation go forward with Owens and Carrico as the two named representatives. Hence, the motion to consolidate is granted.

At this point the Court notes the argument of counsel that consolidation of these two cases, or class litigation in general, will result in many trials within the main trial. The Court, on the other hand, agrees with the Plaintiffs' counsel that consolidation and class certification will best serve the interest of judicial economy. If, however, as the trial date approaches it appears that confusion is likely, the Court may exercise its power under *Rule* 20(b) or *Rule* 42(b) to order separate trials or make such other orders as will prevent delay or prejudice.

### C. *Motion to Compel.*

Before the Court in the *Owens* case is the Plaintiff's motion to compel discovery of company-wide employment practices. Owens filed this motion while her case was pending as an individual action. Consequently, much of Bethlehem's argument against company-wide discovery has been mooted by the Court's decision to certify the class.[8] Nevertheless, the Court finds Bethlehem's arguments inapposite to even an individual ADEA lawsuit.

In bringing the motion to compel, counsel for Owens attached a copy of a brief opinion issued by a U.S. Magistrate for the Northern District of West Virginia in *Pow-*

*ell v. Blue Cross,* Civil Action No. 83–0034–C. In *Powell,* two plaintiffs who claimed to have been discharged from the defendant's Clarksburg office sought discovery of employment practices in other offices of the defendant. Over the defendant's objections, the Magistrate granted the motion to compel. Bethlehem here adopts the losing argument presented to the Magistrate. It argues that the plaintiff (Owens) can compare herself to the workers who were retained to perform her job duties. The October, 1982, reduction in force, contends Bethlehem, differed from the normal reduction in force where comparable evidence in the form of job replacements is often unavailable. Thus, Bethlehem concludes that statistical evidence obtained from company-wide discovery would be irrelevant given the comparisons which can be made to retained employees.

The Defendant raises the above argument in response to the Fourth Circuit case of *EEOC v. Western Electric Company, Inc.,* 713 F.2d 1011 (4th Cir.1983). In that age discrimination, reduction in force case, the appellant court analyzed the trial court's approach of allowing the EEOC to establish a prima facie case under three elements of the four-element *McDonnell Douglas* model. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* model for proving a prima facie case of age discrimination was described as follows:

"(1) The plaintiff is in the protected age group;

(2) The plaintiff was discharged or demoted;

(3) At the time of discharge or demotion, the plaintiff was performing his job at a level that met his employer's legitimate expectations; and

(4) Following his discharge or demotion, the plaintiff was replaced by some-

---

**8.** Bethlehem argues that statistical evidence is irrelevant when an employee can use the *McDonnell Douglas* model to make a prima facie case. The Supreme Court, however, limited

its model to nonclass actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973).

one of comparable qualifications outside the protected class."

*Western Electric,* 713 F.2d at 1014.

The court acknowledged that the fourth element would not fit well in most reduction-in-force cases. Nevertheless, it held that error had been committed by the trial court in allowing the EEOC to prove a *prima facie* case with only the first three elements. The EEOC, said the *Western Electric* court, should have been required to satisfy the purpose of the fourth element "by producing some other evidence that the employer did not treat age neutrally." *Id.* at 1015. One example would be "to show that, upon the claimant's demotions, persons outside the protected age class were retained in the same positions." *Id.* The position of Bethlehem, shared by the defendant in *Powell,* is that the "best evidence" of any discrimination would be "head-to-head" comparisons of Owens and the employees retained by the employer. This thinking ignores the ability of a plaintiff to establish a *prima facie* case outside of the *McDonnell Douglas* model.

The *McDonnell Douglas* model is designed to allow a plaintiff to make his *prima facie* showing by eliminating the most common nondiscriminatory reasons for the disparate treatment. *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir. 1985). Alternatively, a plaintiff may meet his burden by showing through statistics a pattern of discrimination in the employment practices of the employer. *Williams v. General Motors Corp.,* 656 F.2d 120 (4th Cir.1981). The employer here, Bethlehem, cannot limit the plaintiff to only one method of establishing the *prima facie* case.

For the foregoing reasons, the motion of the Plaintiff for an order compelling discovery is GRANTED. The parties shall comply with discovery in accordance with the supplemental order which will follow.

## D. *Notice.*

In Owens' amended complaint, she has asked that this Court provide a notice to similarly situated employees. Such a notice would, of course, be designed to advise potential plaintiffs of their right to opt in to the case. Bethlehem has not responded to the Plaintiff's request.

The Court notes first that the language of Section 216(b) is silent on whether notice can be given to the class. Absent specific statutory guidance, the Courts have divided on the question. Five circuits have addressed the issue.[9] In the most recent decision, *McKenna v. Champion International Corp.,* 747 F.2d 1211 (8th Cir.1984), the court summarizes the holdings of its four predecessors.

"The Second Circuit has held that district courts have the power to authorize notice. *Braunstein v. Eastern Photographic Laboratories,* 600 F.2d 335, 336 (2d Cir.1978) (per curiam), *cert. denied,* 441 U.S. 944 [99 S.Ct. 2162, 60 L.Ed.2d 1046] ... (1979). The Ninth Circuit has ruled that the district courts have no authority under section 216(b) to direct or permit potential claimants to be notified of the pending suit. *Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859, 864 (9th Cir.1977); *see Partlow v. Jewish Orphans' Home,* 645 F.2d 757, 759 (9th Cir.1981). The Seventh Circuit has determined that district courts lack authority to sent out notice containing indicia that might be misinterpreted as judicial endorsement of the claim, such as court letterhead or official signatures. *Woods v. New York Life Insurance Company,* 686 F.2d 578 (7th Cir.1982). At the same time, the court held that plaintiffs and their counsel did have a right to notify others and that district courts could 'place appropriate conditions on the exercise of that right.' *Id.* at 580. The Tenth Circuit also has ruled the district courts lack the authority to send or direct notice, *Dolan v. Project Construc-*

---

9. The Fourth Circuit Court of Appeals has not had occasion to address the issue. The issue has been presented to two other circuits, but they have declined to choose between the vari-

ous judicial interpretations of Section 216(b). *See Haynes v. Singer Company, Inc.,* 696 F.2d 884 (11th Cir.1983); *Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982).

*tion Corp.,* 725 F.2d 1263, 1268 (10th Cir.1984), and agreed with the Seventh Circuit that plaintiff's counsel possesses a right of reasonable communication with potential class members."

*Id.* at 1212–13.

The district courts are similarly divided.[10]

■ The Court finds the line of cases prohibiting court-authored class notice to be more persuasive, especially since three of those decisions come from this Circuit, albeit at the district court level.[11] The courts not permitting notice have advanced two rationales for not doing so.

One argument for not permitting notice springs from the nature and history of a Section 216(b) action. As discussed earlier, a class member under Section 216(b) must opt in to the litigation; a *Rule* 23 class member, on the other hand, must choose to opt out of the litigation. Some courts have concluded from this fundamental difference that due process does not require that notice be sent to members of the Section 216(b) class. "It is readily apparent that the due process considerations which necessitate class notice in certain rule 23 situations are not present in [Section 216(b) situations]." *Roshto v. Chrysler Corp.,* 67 F.R.D. 28, 29–30 (E.D.La.1975), *quoted in Kinney Shoe Corp.,* 564 F.2d at 863; *see also Goerke,* 600 F.Supp. 1155, 1159 (N.D. Ga.1984). With no due process requirement and no express statutory authorization, the Tenth Circuit in *Dolan* looked to the historical background of Section 216(b) in search of guidance on whether to allow notice. The Court found that Congress

had changed Section 216(b) to an "opt in" instrument to stem the flow of class actions which developed "after decisions by the United States Supreme Court interpreted the FLSA to provide for compensation that historically had not been reimbursed." *Dolan,* 725 F.2d at 1266 (*citing Anderson v. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). The *Dolan* court concluded that Congress "intended to severely limit the burden on the defendant and the participation of the court" while "still providing for collective and representative actions." *Id.* at 1267. To provide a notice in a Section 216(b) suit, said the *Dolan* court, would violate the congressional intent "to discourage collective litigation by virtue of the requirement of an affirmative act by each plaintiff." *Id.; accord McKenna,* 747 F.2d 1211.

A second concern expressed by the courts in not permitting notice rests upon an ethical consideration: solicitation of claims. Unlike the situation under *Rule* 23, any notice approved by the Court under Section 216(b) will be directed to nonparties. Hence, the Court, or a party, could be seen as "stirring up litigation." *Kinney Shoe Corp.,* 564 F.2d at 863 (*citing Roshto,* 67 F.R.D. at 30). Even one of the courts which allowed notice to be given found it unseemly to have the notice bear the imprimatur of the court.

"[T]here is a serious question whether a federal judge has the power to issue invitations to join a lawsuit. That activity changes the character of the judge from that of an adjudicator of disputes

---

**10.** The following district courts have permitted a class notice: *Lusardi v. Xerox Corp.,* 99 F.R.D. 89 (D.N.J.1983); *Johnson v. American Airlines, Inc.,* 531 F.Supp. 957 (N.D.Tex.1982); *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill. 1982); *Monroe v. United Airlines, Inc.,* 90 F.R.D. 638 (N.D.Ill.1981); *Frank v. Capitol Cities Communications,* 88 F.R.D. 674 (N.D.N.Y.1981); *Soler v. G & U, Inc.,* 86 F.R.D. 524 (S.D.N.Y.1980); *Riojas v. Seal Produce, Inc.,* 82 F.R.D. 613 (S.D. Tex.1979); *Lantz v. B–1202 Corp.,* 429 F.Supp. 421 (E.D.Mich.1977). The following district courts have not permitted a class notice: *Goerke v. Commercial Contractors & Supply,* 600 F.Supp. 1155 (N.D.Ga.1984); *Baker v. Michie Co.,* 93 F.R.D. 494 (W.D.Va.1982); *Montalto v.*

*Morgan Guaranty Trust Co.,* 83 F.R.D. 150 (S.D. N.Y.1979); *Wagner v. Loew's Theatres, Inc.,* 76 F.R.D. 23 (M.D.N.C.1977); *Hill v. Western Electric Co.,* 76 F.R.D. 4 (M.D.N.C.1976); *Roshto v. Chrysler Corp.,* 67 F.R.D. 28 (E.D.La.1975); *McGinley v. Burroughs Corp.,* 407 F.Supp. 903 (E.D.Pa.1975). Several of these cases are concerned with the FLSA rather than the ADEA. No distinction, however, has been made between notice in an ADEA Section 216(b) case and notice in a FLSA Section 216(b) case. *Goerke,* 600 F.Supp. at 1159, n. 4.

**11.** *See, supra,* n. 10.

brought to him to that of a kind of town crier, ringing the tocsin to awaken those who may be sleeping on their rights; and we should require more than the generalities of rule 83 or of the All-Writs Act, 28 U.S.C. § 1651, to conclude that a federal judge, whose authority is confined by Article III of the Constitution to the exercise of the judicial power of the United States, may communicate with nonparties in this way."

*Woods*, 686 F.2d at 581–82.

Although the *Woods* court allowed a court-approved notice to go out to class members, it did not allow the court's letterhead and a judicial officer's signature to appear on the notice. The Second Circuit, in a short per curiam opinion, did not adopt such a limitation. *Braunstein*, 600 F.2d 335. The *Braunstein* court, however, has received criticism for its broad stance. *See Goerke*, 600 F.Supp. 1155. Moreover, the holding of the *Braunstein* court that concern for unethical solicitation had been quelled by recent United States Supreme Court decisions was criticized in a recent district court opinion from this Circuit. *See Baker v. Michie*, 93 F.R.D. 494 (W.D. Va.1982).[12]

A review of the cases which have considered the question of notice and the solicitation problem reveals a series of responses along a continuum. The *Braunstein* court allowed a formal notice bearing the imprimatur of the court; the *Woods* court allowed a formal notice without the imprimatur of the court; the *Dolan* court allowed reasonable communication consistent with recent Supreme Court decisions; and the *McKenna* and *Kinney Shoe Corp.* courts forbade any type of notice or communication. The Court here accepts the *Dolan* approach. The parameters of communication under the *Dolan* decision were discussed by Judge Forrester in *Goerke v. Commercial Contractors & Supply*, 600 F.Supp. 1155 (N.D.Ga.1984):

> "As the court in *Dolan* noted, recent Supreme Court decisions regarding legal communication would allow reasonable communication by the plaintiff and his counsel '... with those parties he can discover without judicial assistance.' ... Thus, although this court has found that it has no power to approve and authorize the dissemination of a notice to potential class members, there are forms of protected communication in which plaintiff's counsel can engage with potential class members. As regard plaintiff's fears, expressed in the brief in support of this motion, plaintiff need only make certain that any communications in which he engages are directed toward the provision of *notice*, rather than toward active solicitation of individuals to join in the present litigation."

*Id.* at 1161.

In summary, this Court rejects the concept of a formal, Court-approved notice. Counsel is not forbidden to communicate with prospective plaintiffs, but in doing so they are admonished to abide by the recent Supreme Court rulings [13] and their respon-

---

**12.** The *Baker* court had the following criticism to offer:

> "*Braunstein* also referred to the recent trend in the law allowing attorney advertising as eroding the logic of the *Kinney Shoe* court's holding that permitting notice violated strong policy considerations against the solicitation of claims. Such reasoning is less than persuasive, however, except on a surface level. An analysis of this matter shows that the trend, if that is what it is, is severely circumscribed, allowing in general the advertising of availability of legal services, a far cry from the notice contended for in this case, a notice which zeroes in on a particular potential plaintiff in a particular litigation. Further, the notice, no matter how artfully drawn by counsel or the court or both, is bound to carry a strong intimation of an affirmative invitation to come join the current plaintiff in an assault on the defendant-employer. In short, this court does not read the relaxation of the stringency of the rule against advertising to relax similarly the stringencies of the rule against stirring up of litigation."

*Baker*, 93 F.R.D. at 496.

**13.** As did the *Goerke* court, this Court incorporates by reference the following Supreme Court decisions: *In Re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *Ohralik v. Ohio*

sibilities under the West Virginia Code of Professional Responsibility, DR 2–103.

### III. *Conclusion*

For the reasons set forth above, the Court ORDERS as follows:

1. The Plaintiff Owens' motion to certify the class and to file her amended complaint is granted.

2. The joint motion of Plaintiffs Owens and Carrico to consolidate is granted. Owens and Carrico shall be the two named class representatives.

3. The class shall consist of those employees who were employed in Bethlehem's old Kayford-Boone-Nicholas or Marion-Barbour Divisions, or its new West Virginia Division, are in the protected age class, and were discharged during the 1982 reduction in force, specifically the time period from September 15, 1982, to December 15, 1982. Any plaintiffs wishing to join this litigation must file their written consents with the Clerk's Office by January 1, 1986.

4. The Plaintiff Owens' motion to compel is granted as delineated in the discovery and scheduling order to be issued by the Court.

5. The Plaintiff's request for notice is denied.

6. The *Carrico* case, Civil Action No. 84–2336, is hereby ORDERED transferred from the docket of the Honorable Dennis R. Knapp, to the docket of this Court.

*State Bar Association,* 436 U.S. 447, 98 S.Ct. 1925, 56 L.Ed.2d 444 (1978); *In Re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).