**Dr. Sam SHUSHAN, individually and for and on behalf of others similarly situated, and Dr. Erik K. Bonde, individually and for and on behalf of other similarly situated, Plaintiffs,**

v.

**The UNIVERSITY OF COLORADO AT BOULDER and the Board of Regents, Defendants.**

Civ. A. No. 89–N–1700.

United States District Court, D. Colorado.

April 13, 1990.

Robert G. Good, Timothy D. Good, Good & Good, P.C., Englewood, Colo., for plaintiffs.

Joanne M. McDevitt, Charles V. Sweet, Office of University Counsel, Denver, Colo., for defendants.

### MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

According to their Complaint, Dr. Sam Shushan and Dr. Erik Bonde, the two named plaintiffs, are full-time, tenured professors of biology in the University of Colorado at Boulder's College of Arts and Sciences. Professor Shushan is 67 years old, has been employed by the University for approximately 40 years, and is paid an annual salary of $26,118.00. Professor Bonde is 66 years old, has been employed by the University for approximately 35 years, and is paid an annual salary of $32,889.00.

In November of 1988, according to plaintiffs, the dean of the College of Arts and Sciences and the chairman of the Biology Department "urged" them to accept early retirement. (Defendant denies that plaintiffs were "urged" to take early retirement; they were merely informed of their retirement "options.") In December of 1988, the professors say, they declined to accept early retirement.

This lawsuit asserts that the University retaliated against the professors when they refused to take early retirement and thus violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–634 (West 1985). Subject matter jurisdiction is premised on 29 U.S.C.A. § 626(c) (West 1985) and 28 U.S.C.A. § 1331 (West 1966). The alleged retaliation included acts such as moving the professors from private offices equipped with laboratory space to "designated storerooms" without such space, denying them earned sabbatical leave, taking away their laboratory assistants, and depriving them of certain teaching responsibilities. Plaintiffs also assert that the University generally has discriminated against them and other "older faculty members similarly situated" by paying them salaries lower than salaries paid younger faculty members and by awarding them lesser annual increases in salary.

The matter before me is plaintiffs' motion for "conditional certification" of a class. Plaintiffs argue that, because their lawsuit is a "statutory" class action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b) (West 1965), incorporated by reference into the ADEA in 29 U.S.C. § 626(b) (West 1985), they may proceed unencumbered by the procedural restraints which Fed.R.Civ.P. 23 usually imposes on class actions. Citing a recent Supreme Court decision, *Hoffmann–La Roche, Inc. v. Sperling*, —— U.S. ——, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), for the proposition that the court has the power to authorize notice to potential class members, their motion asks the court to (1) make a preliminary determination concerning the scope of the potential class, (2) grant them the right to discover the identity of potential class members, and (3) approve a form of notice to potential class members. Under 29 U.S.C.A. § 216(b) (West 1965), the "final class" would then consist of those people who file with the court a written consent to become plaintiffs.

To evaluate plaintiffs' contention that no part of Fed.R.Civ.P. 23 applies to an action under the ADEA, I must first discuss the peculiar form of proceeding established by the ADEA. As I noted earlier, section 7(b) of the ADEA, 29 U.S.C. § 626(b) (West 1985), states that the ADEA's "provisions ... shall be enforced in accordance with the powers, remedies, and procedures provided in" 29 U.S.C.A. § 216(b) (West 1965) —a part of the Fair Labor Standards Act of 1938, as amended by the Portal–to–Portal Act of 1947. The pertinent part of section 216(b) provides:

> Action[s] ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C.A. § 216(b) (West 1965).

The form of action contemplated by section 216 is a hybrid, sharing characteristics of both Fed.R.Civ.P. 20 (permissive joinder of parties) and Fed.R.Civ.P. 23. Like a person who would join as a plaintiff under rule 20 (and in contrast to a member of a plaintiff class under rule 23), the person who would be a plaintiff under section 216 must affirmatively act, by filing "his consent in writing," in order to be associated with the lawsuit; if he does nothing, he will not be bound by the outcome, whether it is favorable or unfavorable. Like a member of a plaintiff class under rule 23, however, (and in contrast to a plaintiff who joins as a plaintiff under rule 20), the section 216 plaintiff does not formally appear before the court or file a pleading; he simply files his written consent. He is therefore not named in the caption, Fed.R.Civ.P. 10(a), and he would not ordinarily be served with papers filed after he files the written consent. Fed.R.Civ.P. 5(a). Once the consent is filed, the section 216 action is maintained by the named plaintiffs "for and in behalf of" the person who has consented.

The peculiar nature of a section 216 action has led courts to different conclusions on the question of the extent to which rule 23 applies in such an action. A few district courts have held that rule 23 applies *in toto* and that the "class" represented in a

section 216 action may even include persons who have not filed the written consent mentioned in section 216. *Blankenship v. Ralston Purina Co.*, 62 F.R.D. 35 (N.D.Ga. 1973); *Gebhard v. GAF Corp.*, 59 F.R.D. 504 (D.D.C.1973) (assuming that rule 23 applies and finding that its requirements were not met). Most courts, however, have suggested, by way of holdings or broad *dicta,* that rule 23 simply does not apply to section 216 actions. *E.g. Dolan v. Project Const. Corp.*, 725 F.2d 1263 (10th Cir.1984) (*dictum*); *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975); *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo.1987); *Walker v. Mountain States Tel. & Tel. Co.*, 112 F.R.D. 44, 45 (D.Colo. 1986); *Owens v. Bethlehem Mines Corp.*, 108 F.R.D. 207, 209–210 (S.D.W.Va.1985); *Watkins v. Milliken & Co.*, 613 F.Supp. 408, 418–419 (W.D.N.C.1984); *Locascio v. Teletype Corp.*, 74 F.R.D. 108, 111 (N.D.Ill. 1977) (*dictum*); *McGinley v. Burroughs Corp.*, 407 F.Supp. 903 (E.D.Pa.1975); *Burgett v. Cudahy Co.*, 361 F.Supp. 617, 622 (D.Kan.1973). I am not completely persuaded by either line of authority, and I believe that the Supreme Court's decision in *Hoffmann–La Roche, Inc. v. Sperling,* —— U.S. ——, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), undermines the rationale of many cases in the latter line of authority. Consequently, I hold that the named representative plaintiffs in an ADEA class action must satisfy all of the requirements of rule 23, *insofar as those requirements are consistent with* 29 U.S.C.A. § 216(b) (West 1965).

The reasons for applying rule 23 to an ADEA class action have been articulated in *Blankenship v. Ralston Purina Co.*, 62 F.R.D. 35 (N.D.Ga.1973). In holding that rule 23 applies *in toto* to an ADEA class action, *Blankenship* noted the "broad, remedial purposes of the ADEA," 62 F.R.D. at 38, and analogized the ADEA's prohibitions against age discrimination to the prohibitions against other forms of discrimination contained in the Civil Rights Act of 1964. It suggested that a "literal application" of the section 216 procedures adopted by reference in the ADEA (including a refusal to apply rule 23) would frustrate

these broad purposes and draw an unwarranted distinction between age discrimination and other prohibited forms of discrimination. Directly addressing the section 216 requirement that each "party plaintiff" must file a written consent with the court, *Blankenship* suggested that this requirement "is met when the representatives of the class file their consents." 62 F.R.D. at 38.

*Blankenship* is ultimately unpersuasive because it does not provide a sensible way of reading section 216's requirement that each person who would be a "party plaintiff" file a written consent with the court. Each person seeking to represent the class in a section 216 action is—and has surely consented to be—a "party plaintiff" by virtue of having been named in the complaint. *See* Fed.R.Civ.P. 7(a), 10(a). To suggest that section 216's requirement of written consent is satisfied if the named representative merely files his own written consent is to deprive the requirement of any real meaning or significance. *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 289 n. 10 (5th Cir.1975). I therefore conclude that Congress meant what it said and said what it meant by incorporating section 216 into ADEA: ADEA may be enforced by way of class actions; but no person may be a "party plaintiff," represented by the named plaintiff(s), unless he files with the court his written consent to be one.

As numerous courts have observed, the section 216 action may thus be characterized as an "opt-in" class action—one in which the class of persons bound by the result consists *only* of those who have taken the affirmative step of filing their written consents. *E.g., LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d at 288; *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir.1982); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir.1977); *Owens v. Bethlehem Mines Corp.*, 108 F.R.D. at 209. This "opt-in" feature of a section 216 action is obviously inconsistent with certain aspects of rule 23. In a class action maintained under rule 23(b)(3), the court is required to give notice to the members of the class, advising them that "the

judgment, whether favorable or not, will include all members *who do not request exclusion.*" (Emphasis supplied.) In a class action under rule 23(b)(1) or (b)(2), the judgment, whether favorable or not, binds all persons whom the court finds to be members; they do not have the option of requesting exclusion. 3B J. Moore, *Federal Practice* ¶ 23.31 (1987). The rule 23 class action, then, is an "opt-out" or "no option" class action—one in which the class of persons bound by the result consists of persons whom the court determines to be members of the class, regardless of their desires, or (in the case of [b][3] actions) persons who fail to take the affirmative step of excluding themselves. *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d at 288 n. 7; *Owens v. Bethlehem Mines Corp.*, 108 F.R.D. at 209 n. 4.

While the "opt-in" feature of section 216 is manifestly "irreconcilable," (*LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d at 288; *Schmidt v. Fuller Brush Co.*, 527 F.2d 532 [8th Cir.1975]), with the "opt-out" feature of rule 23, it does not necessarily follow that every other feature of rule 23 is similarly irreconcilable with section 216. Cases holding that rule 23 is wholly inapplicable in ADEA actions are premised partly on this *non sequitur*, and that is part of the reason they do not seem entirely persuasive. If rule 23 were wholly inapplicable, then an ADEA class under section 216 would be practically formless: the only requirement in the statute itself is embodied in the vague provision that the representatives and the class members must be "similarly situated." The legislative history of the two relevant statutes—the ADEA and the Portal–to–Portal Act of 1947—is equally unilluminating, because the procedural aspects of the class action codified in section 216 are simply not mentioned. *See* H.R.Rep. No. 805, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Admin.News 2213 (ADEA); H.R.Rep. No. 2157, 80th Cong., 1st Sess., *reprinted in* 1947 U.S.Code Cong. & Admin.News 81 (Portal–to–Portal). The most definite conclusion which can be drawn from this history is that the Portal–to–Portal Act, which added the requirement that each party

plaintiff in a section 216 action file a written consent, was part of a broad Congressional response to court decisions imposing unwanted liabilities and burdens on employers under the Fair Labor Standards Act of 1938. *See Dolan v. Project Const. Corp.*, 725 F.2d 1263 (10th Cir.1984). In light of this deafening silence, it does not seem sensible to reason that, because Congress has effectively directed the courts to alter their usual course and not be guided by rule 23's "opt-out" feature in ADEA class actions, it has also directed them to discard the compass of rule 23 entirely and navigate the murky waters of such actions by the stars or whatever other instruments they may fashion.

Two other reasons are sometimes advanced for holding rule 23 inapplicable in ADEA class actions. The first has been stated as follows:

> The legislative history of the Age Discrimination Act clearly establishes that the Act is to be enforced in accordance with the procedures of the Fair Labor Standards Act. Congress at the time the Act was adopted was well aware of Rule 23 of the Federal Rules. If Congress had wished to adopt the Rule 23 enforcement technique for the Age Discrimination Act, it would not have explicitly stated that the Act was to be enforced in accordance with the Fair Labor Standards Act.

*McGinley v. Burroughs Corp.*, 407 F.Supp. 903, 911 (E.D.Pa.1975).

This argument would have considerable force if it could be demonstrated that Congress, when it enacted the ADEA in 1967, legislated against a background of established case authority holding that rule 23 did not apply to the section 216 action which it was adopting by reference in the ADEA. This, however, is not the case; in fact, it appears that most of the authority refusing to apply rule 23 in section 216 actions is really post–1967 authority involving the ADEA itself. The pre–1967 cases involving section 216, decided before rule 23 was extensively restructured in 1966, applied rule 23 and treated section 216 cases as "spurious" (rather than "true")

class actions under the then-existing version of the rule. *E.g., Pentland v. Dravo Corp.,* 152 F.2d 851 (3d Cir.1945). It therefore seems plausible to suppose that Congress, when it adopted section 216 into the ADEA in 1967, thought that rule 23 would apply, except that the section 216 class would consist only of persons who affirmatively "opted in" to the action—which was exactly how the old "spurious" class action operated. 3B J. Moore, *Federal Practice* ¶¶ 23.30, 23.31 (1987).

The second argument sometimes advanced for refusing to apply rule 23 in ADEA class actions is that rule 23's procedural requirements are designed primarily to protect the rights of class members who are not before the court as named parties but will nonetheless be bound by the judgment. Since a judgment in a section 216 class action binds only those who have filed their written consents to be parties, the argument goes, the protections afforded by rule 23 are unnecessary. *See Dolan v. Project Const. Corp.,* 725 F.2d at 1266; *Burt v. Manville Sales Corp.,* 116 F.R.D. at 278; *Walker v. Mountain States Tel. & Tel. Co.,* 112 F.R.D. at 47; *Roshto v. Chrysler Corp.,* 67 F.R.D. 28, 29–30 (E.D. La.1975); *Vivone v. Acme Markets, Inc.,* 105 F.R.D. 65 (E.D.Pa.1985). The argument overlooks two considerations. *First,* the procedures embodied in rule 23 are designed not only to protect the rights of class members, but also to allow effective disposition and management of the litigation. For example, the requirement that the class be "numerous" (Fed.R.Civ.P. 23[a][1]), the requirement that there be "questions of law or fact common to the class" (Fed.R.Civ.P. 23[a][2]), or the requirement that, in one type of action, common questions of law or fact "predominate over any questions affecting only individual members" (Fed.R.Civ.P. 23[b][3]) have little to do with protection of class rights and much to do with handling the lawsuit effectively. *Second,* the fact that a person must file his written consent before he is bound by any judgment should not significantly lessen the court's responsibility to protect his rights by employing the procedures provided in rule 23. For example, in

contrast to a person who actually intervenes in the action, either in person or through counsel, the person who merely files his written consent should not be expected fully to appreciate actual or potential conflicts between himself and the class representatives or counsel for the class representatives. The court should protect him by insuring that the representative will fully and adequately protect his interest. Fed.R.Civ.P. 23(a)(4).

The two considerations discussed in the previous paragraph take on added significance in light of the Supreme Court's decision in *Hoffmann–La Roche, Inc. v. Sperling,* —— U.S. ——, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Before *Sperling,* the nature of an ADEA class action and the role of the district courts in managing such actions was unclear. In some circuits, both the court and counsel for the class representatives were prohibited from notifying potential class members that an action was pending. *Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859 (9th Cir.1977). Other circuits, including the Tenth, permitted plaintiffs' counsel to communicate with potential class members but held that the district court had no discretion to issue any notice to potential plaintiffs or to facilitate such notice. *Dolan v. Project Const. Corp.,* 725 F.2d 1263 (10th Cir.1984). Discovery designed solely to identify potential class members was not permitted. *Id.; Burt v. Manville Sales Corp.,* 116 F.R.D. at 278. Elsewhere, district courts were permitted to (1) supervise the process of giving notice to potential class members and (2) allow discovery designed solely to identify potential members and facilitate notice. *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335 (2d Cir.1978).

*Sperling* resolved this conflict and adopted the view that the district courts have discretion—indeed, a "managerial responsibility"—to facilitate notice to potential class members and to order discovery of their identity. —— U.S. at ——, 110 S.Ct. at 486. Stressing the benefits of collective action to both ADEA plaintiffs and the judicial system, the Court observed that district courts have "the requisite pro-

cedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and *not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.*" (Emphasis supplied.) *Id.* Citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 n. 10, 101 S.Ct. 2193, 2199 n. 10, 68 L.Ed.2d 693 (1981) (a case interpreting rule 23), the Court also confirmed that district courts have broad authority to control class actions and to prevent potential misuse of such actions. —— U.S. at ——, 110 S.Ct. at 487.

*Sperling* both facilitates ADEA class actions and suggests that the district courts take a greater role in managing them. The ADEA class action after *Sperling* is more like the familiar class action under rule 23 than a permissive joinder device in which the passive role of the court is "to administer and monitor the litigation process." *Walker v. Mountain States Tel. & Tel. Co.,* 112 F.R.D. at 47. A predictable practical effect of *Sperling* is that district courts will be confronted with more motions, such as the one before me, which seek to define a potential class in broad terms, to obtain discovery identifying all members of the class, and to notify all such persons so that they can decide whether to "opt-in" to the action. In dealing with such motions, I cannot see why the district courts should fail to utilize existing procedures, embodied in rule 23, which are designed to promote effective management, prevent potential abuse, and protect the rights of all parties.

In the complaint and motion now before me, there is no assertion or discussion of any of the normal class actions requirements—numerosity, typicality, adequacy, etc. *See* Fed.R.Civ.P. 23(a). The motion for "conditional certification," rather, suggests the following:

> The appropriate procedure would seem to be that when the Plaintiff files a Complaint in Federal Court alleging the Statutory Class Action, the Plaintiff may properly request certification upon discovery from the employer of the putative members of the class. The Court may

wish to approve the form of the notice to the putative class members.

Plaintiff's [sic] Motion for Conditional Certification of Class; Motion for Order Requiring Disclosure at 2.

I cannot accept the extraordinary assertion that an aggrieved party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class. Before I conditionally determine the scope of the class, plaintiffs will need to satisfy me that there exists a definable, manageable class and that they are proper representatives of the class. They will, in other words, need to show that they satisfy the requirements of rule 23 or convince me that a particular requirement is inconsistent with 29 U.S.C.A. § 216(b) (West Supp. 1965). When that showing is made, I will consider the question of notice under the guidelines set forth in rules 23(c) and 23(d) and in *Hoffmann–La Roche, Inc. v. Sperling,* —— U.S. ——, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

I do not believe that the result I have reached is foreclosed by the Tenth Circuit's decision in *Dolan v. Project Const. Corp.,* 725 F.2d 1263 (10th Cir.1984). In *Dolan,* the narrow question before the court was whether the district court erred in refusing to send "notice to potential plaintiffs in a collective action described in 29 U.S.C. § 216(b)." 725 F.2d at 1265–1266. The Tenth Circuit affirmed, holding that the court in a section 216 action is "without authority to issue notice to all potential plaintiffs." 725 F.2d at 1268. Thus, the broad language in *Dolan* suggesting that an action under section 216 is "diametrically opposed" (725 F.2d at 1267) to a rule 23 class action must be regarded as *dicta,* since the court was not squarely confronted with the question of whether features of rule 23, other than the "opt-out" feature, applied in a section 216 action. *Cf. LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286 (5th Cir.1975).

More importantly, the Supreme Court's holding in *Sperling* undermines *Dolan's* broad language, as well as its precise holding. Based on its review of the legislative history of the Portal–to–Portal Act, *Dolan* suggested that section 216's "opt-in" provisions reflected a Congressional intent to limit the nature of class actions and "to discourage collective litigation by virtue of the requirement of an affirmative act by each plaintiff." 725 F.2d at 1267. It thus viewed the section 216 action more as a permissive joinder device, in which the court has "only passive duties and limited jurisdiction," *id.*, than as a true class action. Since the Supreme Court's decision in *Sperling* regards the section 216 action more as a class action, I believe that the district courts should treat it as one.

For the reasons recited herein, it is

ORDERED that plaintiffs' motion for conditional certification of a class and motion for an order requiring disclosure of the names and addresses of class members are DENIED.