Marvin WILKERSON, et al., Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff,

v.

MARTIN MARIETTA CORPORATION, a Maryland corporation, Defendant.

Civ. A. Nos. 91–S–2078, 92–S–748, 92–S–969, 92–S–1557, 93–S–130, 93–S–385, 93–S–396, 93–S–1501 and 94–S–1247.

United States District Court, D. Colorado.

Feb. 13, 1995.

Todd J. McNamara, for plaintiffs Marvin Wilkerson, et al.

Mark E. Brennan, William J. Martinez, Regional Atty., Philip B. Sklover, Associate Gen. Counsel, James R. Neely, Jr., Deputy Gen. Counsel, for plaintiff E.E.O.C.

John R. Webb, Katherine Peck, for defendant.

ORDER FROM DECEMBER
19, 1994 HEARING

SPARR, District Judge.

THIS MATTER comes before the Court on several motions which were heard by the Court on December 19, 1994. Four of the motions are discussed below. Because the Court overruled the Defendant's only remaining objection on which it based its motion for protective order, that motion was denied, and the protective order was entered by the Court on December 19, 1994. The Court hereby incorporates its rulings from the bench at oral argument.

*Background*

These cases were initially consolidated by this Court on August 10, 1993. The oldest case, 91–S–2078, is *Wilkerson et al. v. Martin Marietta.* After the Equal Employment Opportunity Commission (EEOC) filed its complaint in 94–S–1247, *Equal Employment Opportunity Commission v. Martin Marietta,* it too was consolidated with the other actions (but for discovery purposes only) on June 30, 1994. One of the consolidated actions is the *Floss, et al. v. Martin Marietta* proceeding, which was filed as a representative action under the Age Discrimination in Employment Act (ADEA). Although all of these proceedings have been consolidated for pretrial purposes into one proceeding, there exist important distinctions between the actions filed by the *Wilkerson* Plaintiffs (including the *Floss* collective action Plaintiffs) and the action filed by the EEOC on behalf of all persons aged forty and over whose employment at Martin Marietta was terminated between 1990 and 1992. Many of the distinctions between the *Wilkerson* and *EEOC* actions should be minimized as a result of this order. However, due to the differing stages of discovery in these cases, in particular the recent commencement of discovery in the EEOC's case, differences between the actions will undoubtedly arise in the future. The Court will address them as they are presented. The scope of this order, however, is to assert as much common ground between these cases as possible. This is primarily for case management purposes, but as the Court indicated at oral argument, it is attempting to streamline these actions as much as possible. In that regard, the substantive rulings which are contained in this order shall apply to each of the consolidated cases. With this introduction and scope of the order set forth, the Court will now discuss its rulings on the pending motions heard at oral argument.

*1. The Defendant's Partial Motion to Dismiss or For More Definite Statement in the EEOC's Action (94–S–1247)*

The Defendant filed its partial motion to dismiss or for more definite statement based

upon several grounds. After a telephone status conference with the Court prior to the hearing, the issues raised at oral argument were narrowed considerably. The Court will divide its analysis and ruling on this motion into two areas: first, whether the EEOC may be forced, either through Rules 12(b)(6) or 12(e), to specify whether it has asserted a claim for disparate impact under the ADEA; and second, a determination of what is the applicable statute of limitations for EEOC actions.

## A. WHETHER THE EEOC MAY BE FORCED, EITHER THROUGH RULES 12(B)(6) OR 12(E) TO SPECIFY WHETHER IT HAS ASSERTED A CLAIM FOR DISPARATE IMPACT UNDER THE ADEA

■ The Court has considered the arguments of all counsel in this matter, as the issue concerns not only the EEOC's claims, but also potentially those of the Wilkerson Plaintiffs. This Court is of the opinion that it would be unwise and unwarranted at this early date to force the Plaintiffs first to specify that they are asserting claims under the disparate impact theory, and then to remove those claims from the discovery process in which all other claims would presumably continue. While this Court is not eager to conclude that the decision in *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419 (10th Cir.1993), or some other case authority has decided that disparate impact is an appropriate theory of recovery under the ADEA, it is wont to remove any potential disparate impact claims from the ongoing discovery process. To do so at this time would cause much more harm than the harm which Defendant asserts it will be caused by undertaking discovery and having to respond to discovery requests which may be related to a disparate impact theory. There is no appropriate basis under either Rule 12(b) or 12(e) for the requested relief, and accordingly, the Court does not find it appropriate to either force the Plaintiffs—either the EEOC (to which the motion is directed) or the Wilkerson Plaintiffs to plead any disparate impact claims, or dismiss them to the extent they may be pleaded. The Defendant may, after completion of substantial discovery, raise the disparate impact issue again, and at such time the Court will be inclined to rule on its merits. Defendant's motion to dismiss or for more definite statement is accordingly DENIED on this ground.

## B. THE APPLICABLE STATUTE OF LIMITATIONS FOR EEOC ACTIONS

■ This issue was raised by Defendants in the context of the Court's prior ruling in the Goldstein matter, which is one of the consolidated actions. At oral argument on the Defendant's motion to dismiss Goldstein's claims for failure to comply with the 90 day statute of limitations contained in the 1991 Civil Rights Act, this Court denied the motion. As the Court indicated at oral argument in the present matters, however, the EEOC was not a party to the Goldstein matter, and it will not automatically apply the law of the Goldstein case to the EEOC's action. Concerns qualitatively different from the Goldstein retroactivity issue are present in this case, and they require a different analysis. The Court concludes that there is no inherent inconsistency with a ruling that the statute of limitations provision in the 1991 Civil Rights Act (or more appropriately, lack thereof) applies to the EEOC's action. This is in recognition of the relevant legislative history predating the 1991 Act, namely the Age Discrimination Claims Assistance Acts of 1988 and 1990. These acts were two separate legislative initiatives to revive certain otherwise stale ADEA claims. Pub.L. No. 100–283, 102 Stat. 78 (1988), and Pub.L. No. 101–504, 104 Stat. 1298 (1990). The legislative history relevant to this issue indicates the existence of pervasive problems which the EEOC experienced in both processing and prosecuting age discrimination claims. In light of this compelling legislative history, as well as the absurd results which application of the Portal–to–Portal Act or state statute of limitations would have, the Court concludes that application of the statute of limitations from the 1991 Civil Rights Act is appropriate, and accordingly, there is no applicable statute of limitations in age discrimination claims brought by the EEOC in its claims asserted here on behalf of the class of persons aged 40 and over who were

terminated from their employment from 1990 through 1992.

For the reasons set forth above, the Court does not agree with the holding in *McConnell v. Thomson Newspapers, Inc.*, 802 F.Supp. 1484, 1499 (E.D.Tex.1992), where the court held that the same statutory section (§ 626(e) of the ADEA) which applied to private parties was applicable to the EEOC (by broad construction of the term "the person aggrieved"). This Court is wont to read the silence in the 1991 Civil Rights Act, coupled with the interpretation adopted by the *McConnell* court as an indication that Congress really meant to substantially change the status quo for EEOC limitations purposes. Such a conclusion is far more of a stretch than this Court's present conclusion that, by virtue of its absence from the 1991 Act, and in light of the previous legislative efforts in the Age Discrimination Claims Assistance Acts of 1988 and 1990, Congress intended there be no statute of limitations where the EEOC files suit under the ADEA.

■ Even if the Court were to conclude that a statute of limitations did apply, the EEOC's allegations clearly fall under the continuing violation doctrine, and there is no reason to conclude that this doctrine would not otherwise apply to an age discrimination reduction in force scenario. See *Furr v. AT & T Technologies*, 824 F.2d 1537 (10th Cir. 1987); and *Bruno v. Western Electric Co.*, 829 F.2d 957 (10th Cir.1987).

■ As a consequence of the above holding, the Court consequently rejects several of the arguments raised by Defendant in its motion to dismiss. These points were not raised at oral argument, but in light of the Court's ruling that there is no statute of limitations which applies to the EEOC's filing of age discrimination claims, the Court must also reject the argument that the 300 day "coattailing" rule would apply, and also that the EEOC is bound to specify on which charge or on whose charge(s) it has filed its complaint. There is no statutory provision under the ADEA which requires the EEOC to specify on whose charge a suit is filed, and the Court cannot read the decision in *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) to support such a limitation. There is no such requirement for the commencement of an investigation, and there is no corollary which would mandate or otherwise support the position that such a requirement should be applied in the circumstances of the filing of a complaint by the agency. Accordingly, the Defendant's motion to dismiss or for more definite statement is DENIED.

*2. Plaintiffs' Motion to Proceed as Collective Action and Subclass Issue*

These cases present questions of first impression. The Wilkerson Plaintiffs filed a motion to proceed as collective action which was pending for many months prior to the filing by the EEOC of its own action. Due to the nature of the allegations in the EEOC complaint, the fact that the EEOC waited so long to file (until a certain number of persons were laid off) is consistent with the nature of its claims. During the pendency of the Wilkerson Plaintiffs' motion to proceed as a collective action, many persons (who are now covered under the EEOC's filing) filed notices of their intent to "opt-in" or be bound as plaintiffs in the Wilkerson collective action. Before the Court ruled on the Plaintiffs' motion to proceed as a collective action or otherwise determine the legal effect of the opt-in notices, the EEOC filed its complaint. The question of first impression concerns what impact the filing of the EEOC's complaint has on the persons who seek to be included as plaintiffs by virtue of filing an opt-in notice (this regards the opt-in notices which have already been filed, both before and after the filing of the EEOC complaint, as well as any opt-in notices which may be filed in the future). It is discussed in detail in the Court's ruling on the Defendant's motion to dismiss the opt-in plaintiffs. In resolving the question, the Court will conduct its analysis as follows: first, whether a representative or collective action is appropriate under the applicable considerations; second, a determination of the appropriate members of the class; and third, a discussion of the potential "subclass" issues.

Representative actions under the ADEA are made possible by the ADEA's incorporation of § 16(b) of the Fair Labor Standards

Act (FLSA). 29 U.S.C. § 626(b). That section provides that an action may be maintained by one or more employees for and in behalf of himself or themselves and other similarly situated persons. No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought. A plaintiff's filing of consent (opt-in notice) need not be filed when the action is brought by the EEOC.

## A. WHETHER A COLLECTIVE ACTION IS APPROPRIATE

■ Representative actions under the ADEA, as governed by § 16(b) of the FLSA (29 U.S.C. § 216(b)) differ from class actions under Rule 23 of the Federal Rules of Civil Procedure. The character of these differences, as it relates to the propriety of a court allowing an action to proceed as a collective or representative action, has been the subject of diverging decisions and commentaries on the similarities and dissimilarities to Rule 23. The Court will not provide an exegesis of these decisions, but will limit its discussion here to an examination of restricted issues. The most persuasive authority for requiring the named plaintiffs in a representative action to comply with Rule 23 requirements is Judge Nottingham's decision in *Shushan v. University of Colorado at Boulder,* 132 F.R.D. 263 (D.Colo.1990). That decision instructs that the opt-in provisions of the FLSA may not go far enough to protect important concerns such as case management by the court as well as the court's responsibility to ensure that the class representative fully and adequately protect the rights of the opt-ins. 132 F.R.D. at 267. In light of this ruling as well as several other decisions which have held that Rule 23 requirements are appropriately met in § 16(b) collective actions, the Court will consider, in addition to the unitary standard of "similarly situated" which § 16(b) prescribes, the relevant requirements of Rule 23.

### (1) Similarly Situated Requirement

■ Here the Plaintiffs have alleged they have been victimized by a pattern or policy of age discrimination which motivated the series of layoffs (reduction in force). Some courts have found this type of allegation alone sufficient. *Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294 (N.D.Cal.1991); *Pines v. State Farm General Ins. Co.,* 58 F.E.P.Cas. (BNA) 387 (C.D.Cal.1992). In this regard, the allegation of discrimination by the Plaintiffs transcends the differences existing among levels of management responsibility as well as differences stemming from employment in different divisions or operating units of the Defendant corporation. See *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51–52 (3d Cir.1989). The similarly situated requirement under the FLSA, as adopted by the ADEA, is therefore met.

### (2) Rule 23 Considerations

While this Court is not convinced, as Judge Nottingham was in *Shushan,* that the United States Supreme Court's decision in *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), converted the ADEA representative action into something "more like the familiar class action under Rule 23," 132 F.R.D. at 268, it does find the case management and control aspects of Rule 23 to be a compelling basis for considering such additional requirements. Accordingly, the Court will consider the applicable class action requirements as specified under Rule 23.

### (a) Numerosity

■ Although the Plaintiffs have merely asserted but have not otherwise shown that joinder is impracticable, this Court will infer that proceeding as a class action is the more expeditious method. See *Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 603 (D.Colo.1990). Judicial economy also greatly favors certification under this criterion.

### (b) Commonality

■ As described above, the central claim in the case is that the Defendant engaged in a pattern or practice of age discrimination against older employees. Whether the oldest of the older employees (who the Plaintiffs allege were laid off first) may have been in some kind of competition against younger workers within the protected class has little

bearing on the commonality of claims here. The action is premised on an alleged policy applied over several years, not a single instance of application of that policy. The fact that Plaintiffs have alleged that all employees 40 and over were targeted as part of the policy greatly overshadows the Defendant's defense that the inherent competition (arising out of the fact that the action does not concern a single act amounting to a reduction in force) among the class members somehow renders their claims distinct from one another and thus inappropriate for class certification. Indeed, even in light of damages issues which are individual in character, there is no detraction from the common nucleus of facts which the liability issues raise. The Court finds unpersuasive the Defendant's argument that, because this action is a pattern or practice claim in a reduction in force case, there is consequently competition among the many Plaintiffs and therefore inconsistent claims. The qualitative standard for meeting this prerequisite is therefore met.

### (c) Typicality

■ This factor, along with adequacy of representation, focuses on the characteristics of the class representative(s). In the employment discrimination context, the typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims. *General Telephone Co. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). In this context, the Court must focus on the relationship between the injury to the named Plaintiffs and the conduct affecting the class. Typicality exists where the injury and the conduct are sufficiently similar. See *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988). At this stage, it is not appropriate for the Court to undertake an inquiry into the merits of the suit in order to determine whether it may be maintained as a class action. The Defendant has raised several points concerning in particular the typicality and adequacy of representation with regard to members of the proposed class whose layoffs were qualitatively different from those of other members. Defendant offers as an example the group of older workers who were offered and accepted

early retirement packages. The Court is unable to determine, and it also deems such determination inappropriate at this stage of the proceedings, whether there are factual differences going to the circumstances of some class members' terminations which defeat either the typicality or adequacy of representation requirement.

The Court would observe that any differences in the amount of damages claimed will have little or no impact on the typicality of the class representative's claims. Only where these differences in damages stem from qualitatively different claims of liability would the typicality element be questioned. This factor is met based on the threshold standard with which Plaintiffs must comply at this stage of the proceedings.

### (d) Fair and Adequate Protection of Interests

■ Because there appears to be no antagonism of interests between the class representatives and the conduct alleged by the class members as a whole, the court must conclude that the representatives are able to fairly and adequately protect the members' interests. Accordingly, the Plaintiffs' motion to proceed as collective ADEA action is GRANTED.

### B. DETERMINATION OF APPROPRIATE MEMBERS OF CLASS

As set forth above, as to both considerations of the class itself, as well as the relationship of the class representatives to members of the class, the Court has determined that, at this time, prosecution of the Wilkerson action is appropriate as a representative or collective ADEA action. No distinctions as to the types of plaintiffs, with regard to either liability or damages issues is therefore warranted. The actual members of the class of Wilkerson Plaintiffs, or the "opt-in plaintiffs" must be determined by reference to further analysis contained in the discussion below concerning the status of the opt-in plaintiffs. For this reason, the actual members of the Wilkerson action will be determined by reference to that ruling.

## C. SUBCLASS ISSUE

With regard to the subclass issue, the Court observes that it heard brief argument from counsel regarding the propriety of designating "subclasses" for groups of Plaintiffs such as voluntary retirees. These subgroups have been proposed by the Defendant to be proper not only in the Wilkerson action, but also in the EEOC's action.

The Court must conclude that it is unable at this time to determine whether, and to what extent if appropriate, the classes of both the private and the EEOC plaintiffs is appropriately subdivided, for either liability or damages purposes. With regard to the latter two considerations of typicality and adequacy of representation, the Defendant has leave to raise these issues in the future as the theories of liability and the defenses are fleshed out as a result of discovery. The Court would merely reiterate that at this stage of the proceedings, the Court is primarily focused on the alleged policy which is at issue, and this is appropriate regardless of how many "layers" the alleged policy may have filtered down before it affected any particular plaintiff.

*3. Plaintiffs' Statement and Defendant's Motion to Dismiss Concerning the Opt–In Plaintiffs*

The Court has determined that the Wilkerson matter may proceed as a collective action, and it is incumbent upon the court to determine the appropriate members of that collective action. As outlined in the preceding section, this case presents a question of first impression regarding the determination of the legal status of the opt-in plaintiffs (or those who might choose in the future to file opt-in notices) in light of the filing of the EEOC's action (on May 26, 1994) before the Court ruled on the Plaintiffs' motion to proceed as a collective action.

In order to determine who the appropriate members of the representative class are, the Court must determine the status of those who have filed opt-in notices in light of the EEOC's filing of its complaint. The opt-in plaintiffs who filed notices prior to the EEOC filing, along with those who filed afterward, are the subject of the Defendant's motion to dismiss the opt-in plaintiffs.

The ADEA, at 29 U.S.C. § 626(c), provides that the right of any person to bring a civil action in a court of competent jurisdiction for legal or equitable relief shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under the act. The Court must read this section with the provision in § 216(b), which allows an employee to become a party plaintiff to an already filed suit by filing written consent with the court in which such suit is pending. The majority of courts which have construed § 626(c) have limited the interpretation of the term "to bring" to mean "to commence," and not a broader construction which might mean "to commence or maintain." *EEOC v. Eastern Airlines,* 736 F.2d 635, 639 (11th Cir.1984), citing *Burns v. Equitable Life Assurance Soc'y,* 696 F.2d 21 (2d Cir.1982) *cert. denied,* 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983).[1]

The consequences of the accepted narrow construction of "to bring" seem to imply that the filing of an opt-in notice after a representative action is filed but before the EEOC files its enforcement action is permissible and appropriate. See *Blumenthal v. G–K–G, Inc.,* 737 F.Supp. 493, 495–96 (N.D.Ill.1990), *aff'd in part,* 39 F.3d 740 (7th Cir.1994). The Defendant asserts that any filing of an opt-in notice prior to a court's actual ruling allowing an action filed as a representative action to proceed as one is a legal nullity. The filing of an action as a representative action does render at least a prospective member's claim to participate in such action colorable, but the choice of whether to allow the opt-in notices, at least those filed prior to the EEOC action, presents essentially an all-or-nothing scenario. There are many factors which the court finds appropriate to consider here. First, it is not appropriate to penalize the opt-in plaintiffs, whose claims were asserted in a sort of legal limbo, for the fact

---

1. One of the bases for rejecting the argument that EEOC actions should oust those already filed by private plaintiffs is the same argument as that raised by Defendants here: that permitting pending private ADEA suits to continue alongside of an EEOC suit will deter conciliation and cause duplication of effort. 696 F.2d at 24.

that the court did not rule on the motion to proceed as a collective action prior to the time of the EEOC's filing. While it is true that in the situation presented by this type of case, the court might have *sua sponte* acted, or the Wilkerson counsel might have pushed harder to clarify their position (regarding the legal certainty of the relationship) on the opt-ins, such was not the case here. In light of the broad and flexible standard which applied to the propriety of proceeding as a collective action, it seems appropriate that the opt-in plaintiffs had, at least prior to the EEOC filing, something more than just a colorable claim to participate in the Wilkerson case as a collective action. Indeed, the only act which was required of the opt-in plaintiffs was to file their notices of consent. They did so. To hold their notices at this time be legal nullities would amount to an arbitrary deprivation of their right to opt-in. On the other side, Defendant can assert no particular prejudice it would suffer which would approximate the opt-in plaintiffs' forfeiture. Accordingly, the Court must conclude that the filing of the opt-in notices was functionally equivalent to bringing an action under the ADEA. Consequently, the EEOC's filing of its suit does not cut off any rights of those opt-in plaintiffs who filed notices of their intent to opt-in to the Wilkerson litigation prior to May 26, 1994, and they are appropriately members of the Wilkerson collective action.

■ With regard to the opt-in plaintiffs who filed after the date on which the EEOC filed its complaint (May 26, 1994), as well as any potential members who might wish to file opt-in notices in the future, the character of applicable considerations changes substantially. The Court is bound to construe the two above-referenced portions of the ADEA together. There is no case authority or other source to provide guidance as to the resolution of this issue. In light of the Court's interpretation that the 626(c) cutoff provision "to bring" would contemplate joinder of a plaintiff to an existing suit by virtue of filing an opt-in notice, it is likewise compelled to hold that the cutoff provision would apply to any opt-in notice filed after the EEOC filed its complaint. The Court is aware of no decision which would support a result which would either save or throw out these after-filed opt-in notices, and the Court would reiterate that, in its attempt to read the relevant statutory sections together, such a result seems logical. The closest applicable analogy is found in *Sperling v. Hoffmann–La Roche, Inc.,* 24 F.3d 463 (3d Cir.1994), where the court determined whether a consent to opt-in must be filed by one who wishes to participate in an ADEA class action within the same time limit in which he or she was bound to file an individual complaint.

Accordingly, for the reasons set forth above, the Wilkerson collective ADEA action is limited to inclusion of the individuals who filed their notices of intent to opt-in on or before May 26, 1994. Defendant's motion to dismiss the opt-in plaintiffs is therefore DE-NIED IN PART AND GRANTED IN PART. The Plaintiffs in the Wilkerson action include the following individuals:

Warren Abbott; William A. Ames; Conrad W. Anderson; E. Barry Benoit; Richard Berry; Robert V. Blair; Robert Carlomagno; Eugene Carter; Nathaniel S. Celious; Eugene Chelius; Robert Collins; Michael Conroy; Harold E. Cook; Glen W. Crofford; Robert Crosby; Richard Destarac; Roger Dickman; Larry Dilts; Kirk R. Dugan; Janice L. Ecos; William Fethke; David Allan Fitzwater; David A. Foran; Joseph Froechtenigt, Jr.; Robert A. Golla; Russell R. Gullett; Ronald C. Haptonstall; Bernard Harbick; William F. Hardin; Alvin E. Hargis; Preston N. Hassell; Donald A. Hawkins; Alvin E. Herwitz; James R. Hoagland; Carl Hups; Fredric H. Ikeya; Samuel J. Jones; Ed Kerns; Dwight W. King; Gordon R. Knutson; Joseph R. Laughead; Kenneth Lawrence; David J. Lazarz; Alice Lee; James T. Luthjohn; Bruce McCutchan; Gerald G. Madsen; Richard A. Malmros; William E. Manners, Jr.; James A. Manning; Dan Martinez; Harold L. Martinez; Claude Melton; Rodger Miller; Charles R. Mills; Clinton J. Moinat; Clifford H. Mosher; Clifford S. Murphy; Michael C. Natali; Edward J. Nicholas; Kenneth D. Ott; Joseph A. Patrick; Loney E. Peralta; Sandra Pflaster; James K. Potts; Leonard R. Powell; Gunther S. Prolic; Arling Reese; Daniel A.

Rohrback; Roger J. Ringer; John L. Rodriguez; Barbara A. Roepke; Rudolph Romero; Thomas F. Rouen; Joe I. Sanchez; Richard E. Sebben; Kenneth Shipe; Jennifer Simpson–Hyde; Carter Sloan; John C. Smith; Anton Stark; John L. Swanger; Frederick W. Thornton; Clyde J. Tinker; William Tomaskovic; S. Stevens Tucker; Thomas F. von Liebig; Ronald F. Wersinger, Sr.; Anita Whisenhunt; Mary Lou Willson; Sidney Wilson; Joe H. Wood; George H. Wray; and John Young. Ernesto Cordova and James E. Ramsey have been deleted from the list because they filed, on June 14 and June 16, 1994, respectively, withdrawals of their opt-in notices.

*4. Plaintiffs' Motion to Compel Discovery*

With regard to this motion, the Court ruled that it was appropriate for Magistrate Judge Schlatter to consider this motion filed by the Wilkerson Plaintiffs which seeks, among other things, the ranking lists which lie at the heart of many of the claims and defenses in the Wilkerson case. The Court determined at oral argument that this matter was properly referred to the Magistrate Judge to hear and determine issues stemming from Defendant's claim of burdensomeness with regard to the production of records—many of which it claims no longer exist. Accordingly, Magistrate Judge Schlatter will determine the separate issues at a hearing, and the parties shall closely consider the rulings in this order in light of the continuing pendency of certain issues in the protective order.

Finally, the Court finds it appropriate, in an effort to further streamline these cases for discovery purposes, to bind Plaintiff EEOC to all discovery rulings made by Magistrate Judge Schlatter to the extent that such rulings impinge on class claims. The EEOC naturally may file an appropriate motion to reconsider or an objection to such ruling in circumstances it deems appropriate.