CHATEAU de VILLE PRODUCTIONS, INC., Westbury Music Fair, Inc., Connecticut Performing Arts Foundation, Inc., and Delta D. & I. Corp., Plaintiffs-Appellees,

v.

TAMS–WITMARK MUSIC LIBRARY, INC., Defendant-Appellant.

No. 16, Docket 78–7069.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1978.

Decided Nov. 6, 1978.

Bertram M. Kantor, New York City (Wachtell, Lipton, Rosen & Katz, New York City, Steven M. Barna, Michael W. Schwartz, Theodore N. Mirvis, New York City, of counsel), for defendant-appellant.

Daniel R. Solin, New York City (Solin & Breindel, New York City, Schlanger, Blumenthal & Lynne, New York City, of counsel), for plaintiffs-appellees.

Before FEINBERG, MANSFIELD and SMITH, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Tams-Witmark Music Library, Inc. appeals from an order of the United States District Court for the Southern District of New York, Kevin T. Duffy, J., which certified a plaintiff class in this antitrust action. Tams-Witmark argues that the claims asserted are not suitable for class action treatment and that the named plaintiffs will not fairly and adequately protect the interests of the class. For reasons given below, we hold that the district court

prematurely certified the class, and we vacate that certification.

I

The four named plaintiffs are owners and operators of theaters that deal with Tams-Witmark, a prominent licensor of stage rights to musical plays. Plaintiff Chateau de Ville Productions, Inc. (Chateau de Ville) operates dinner theaters in Massachusetts, Rhode Island and Connecticut, and is a wholly-owned subsidiary of a publicly owned corporation. Plaintiffs Westbury Music Fair, Inc., Connecticut Performing Arts Foundation, Inc. and Delta D. & I. Corp. operate musical theaters in Westbury, New York, Wallingford, Connecticut and Latham, New York, respectively. Westbury Music Fair, Inc. is also a wholly owned subsidiary of a publicly owned corporation. Tams-Witmark tells us that the controversy leading to this litigation began in 1975, when it advised several licensee theaters that they were improperly deducting so-called parking fees from gross box office receipts thereby reducing the basis on which royalties remitted to Tams-Witmark were computed. Some of the purported representative plaintiffs became involved in the controversy, which apparently became intense enough so that in October 1975, the president of Westbury's parent company wrote Tams-Witmark: "If a lawsuit is what you desire, we are not afraid of it and have a few of our own weapons to utilize." And in May 1976, plaintiffs forwarded a draft of a proposed class action complaint naming Tams-Witmark as defendant, which Tams-Witmark charges was sent for the purpose of negotiating a "settlement" of plaintiffs' private disputes with it. A lawsuit styled as a class action was then filed against Tams-Witmark in June 1976, shortly after efforts to resolve the controversy proved unsuccessful.

The complaint, which seeks damages and equitable relief, alleges that Tams-Witmark unlawfully acquired and monopolized licensing rights to copyrighted musical plays, allowing it to charge excessive licensing fees, and unlawfully tied to licenses a require-

ment that music and textual material be rented from Tams-Witmark, thus violating the Sherman and Clayton Acts. The four named plaintiffs purported to represent all dinner theaters, stock theaters and musical playhouses that had licensed any plays from Tams-Witmark since 1972.

In August 1976, after filing the complaint and before defendant had filed its answer, plaintiffs moved for class certification. The only papers in support of the motion were a 3½ page affidavit of Chateau de Ville's president, which, among other things, indicated the size and importance of Chateau de Ville and Westbury, and three short lawyers' affidavits attesting to the experience of counsel for the purported class. In October, Tams-Witmark cross-moved for discovery on issues affecting the propriety of class status and for a stay of decision on plaintiffs' class certification motion, pending such discovery. Among the issues on which defendant sought discovery were whether questions of law and fact common to the members of the alleged class of plaintiffs predominate, whether the claims of the representative parties are typical of the claims of the alleged class, and whether the named plaintiffs can fairly and adequately protect the interests of the alleged class of plaintiffs.

In March 1977, Judge Duffy denied defendant's motion for a stay of class certification pending discovery and held that the lawsuit could be maintained as a class action on behalf of defendant's licensees[1] under both subsections (b)(2) and (b)(3) of Fed.R.Civ.P. 23.[2] Tams-Witmark promptly sought reconsideration on the ground that it had not been given an opportunity to submit papers focusing on the factual and legal merits of class certification. It then submitted affidavits purporting to show, inter alia, that the named plaintiffs were not typical of the class and would not fairly and adequately represent it. The judge denied the motion for reconsideration without comment, and in September 1977 certified the question of class certification for appeal under 28 U.S.C. § 1292(b). A panel of this court accepted the certification in February 1978, and this appeal followed.

## II

In this court, appellant makes a number of arguments involving both the nature of plaintiffs' action and the ability of plaintiffs to represent the class. Tams-Witmark claims, among other things, that the so-called class of some 100 theaters is not a true class at all. Appellant relies strongly on a recent decision of Judge Frankel in another suit by Chateau de Ville against one of Tams-Witmark's competitors, which held class status inappropriate because of a lack of both typicality and predominance of common questions. *Chateau de Ville Productions, Inc. v. Samuel French, Inc.*, 76 Civ. 2926 (Nov. 23, 1976, S.D.N.Y.). Appellant claims that since musical plays differ in quality, style and popularity, determination of antitrust liability to any theater necessarily depends on differing facts as to any theater necessarily depends on differing facts as to each play license and as to each theater in the plaintiff class. Appellant also argues that the antitrust actions brought by plaintiffs are not appropriate for class action treatment because the plaintiffs must prove the fact of antitrust injury as an element of the substantive

---

1. In an amendatory order, the class was defined as:

   all dinner theatres, musical theatres, playhouses and others who have obtained from defendant between June 24, 1972 and September 29, 1976 stage performance rights to musical plays for presentation by substantially professional casts before paying audiences and who were party to or otherwise covered by a contract with the Actors' Equity Association at the time of at least some of these performances . . . .

2. Other motions were also simultaneously decided. Defendant moved to delete Westbury as a plaintiff or, in the alternative, to join Music Fair Enterprises, Inc. its parent corporation; the latter relief was granted. Defendant's motion to dismiss plaintiffs' Clayton Act claims was denied. Plaintiffs moved for a separate trial on counterclaims asserted by defendant against Chateau de Ville and Connecticut Performing Arts Foundation and for a stay of discovery on those claims; the judge granted the former relief, and denied the latter.

violation as to each class member,[3] because defining the relevant market presents individual questions as to each theater, because the effect of alleged monopolization must be considered separately[4] and because the tie-in claims require individual proof of coercion and injury.[5] Appellant also claims that the four named plaintiffs will not fairly and adequately protect the interests of the class because these four firms are abusing the class action device, because they have, due to their unique size and character, different economic interests from the rest of the alleged class, and because there are further individual conflicts involving plaintiff Westbury[6] and Chateau de Ville, and its counsel.[7]

Appellees respond vigorously to most of these contentions, arguing that common questions predominate over individual ones,[8] that variation in damage claims is not alone sufficient to defeat certification of a class,[9] that definition of the relevant market does not involve individual questions as to each theater,[10] and that the alleged conflicts that purportedly disqualify the named plaintiffs as class representatives either do not exist, or if later are found to exist, may be dealt with at that time.[11]

The case thus bristles with numerous thorny questions regarding the amenability of various kinds of antitrust suits to class action treatment and the fitness of these particular plaintiffs as class representatives. Although the former group of issues doubtless led—at least in part—to this court's earlier § 1292(b) certification, we do not believe it appropriate to reach them. On this record, we believe that the district court acted prematurely in resolving the latter issues, those concerning the adequacy or fairness of representation.

■ As set forth above, defendant sought discovery to show, inter alia, that the named plaintiffs had used the class action device for personal purposes, and

---

**3.** In support of the proposition that plaintiffs must prove the fact of injury as an element of the antitrust violation, appellant cites, e. g., *International Rys. of Central America v. United Brands Co.*, 532 F.2d 231, 248 (2d Cir.), cert. denied, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976). Appellant also points to cases in other circuits, see, e. g., *Windham v. American Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) (en banc), cert. denied, 435 U.S. 968, 88 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Shumate & Co. v. NASD, Inc.*, 509 F.2d 147, 155 (5th Cir.), cert. denied, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975), as holding that the presence of this issue without more makes individual questions predominate over common ones.

**4.** Appellant cites, e. g., *Ott v. Speedwriting Publishing Co.*, 518 F.2d 1143, 1150 (6th Cir. 1975); *National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620, 636 (S.D.N.Y. 1974), aff'd, 572 F.2d 953 (2d Cir. 1978).

**5.** Appellant cites, e. g., *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976).

**6.** Appellant alleges that some directors or officers of Westbury and its parent company are also Broadway producers of some musicals licensed by Tams-Witmark and thereby receive 40 percent of the royalties paid to the copyright owners by Tams-Witmark. This, defendant argues, makes such officers "co-conspirators" as defined in the complaint, and thus places Westbury in conflict with the interests of the purported class of licensees.

**7.** Appellant alleges that one of plaintiffs' counsel has a significant stock interest in Chateau de Ville, Inc., the parent of plaintiff Chateau de Ville Productions, Inc., and argues that this relationship between class counsel and class representative is improper, since it may lead to such abuses as settlement on terms less favorable to other class members.

**8.** Appellees cite *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34 (S.D.N.Y. 1977) (Frankel, J.), appeal dismissed, 574 F.2d 656 (2d Cir. 1978).

**9.** Appellees cite, e. g., *Chevalier v. Baird Savings Association*, 72 F.R.D. 140 (E.D.Pa.1976); *Grad v. Memorex Corp.*, 61 F.R.D. 88, 103 (N.D.Cal.1973).

**10.** Appellees cite *International Boxing Club of New York, Inc. v. United States*, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959).

**11.** Appellees argue that the alleged stock interest, see note 7, *supra*, is so insignificant as not to constitute a conflict, and that if the alleged conflict regarding officers of Westbury, see note 6, *supra*, is later established, an appropriate order may be entered either removing Westbury as class representative, creating subclasses or decertifying the class.

that the lawsuit was utilized to obtain a "settlement" of claims which had their origin not in a "class" grievance but rather in defendant's attempts to collect royalties owing to it by the named plaintiffs. This would be an unintended use of the class action device. More importantly, defendant sought discovery to show that all four class representatives have emphasized "big name" individual performers and related acts at their theaters, and that the Broadway musicals licensed by defendant constitute a very small part of the entertainment shows at the named plaintiffs' theaters in contrast with the larger percentage of musicals presented at the other theaters in the class. Defendant further sought to show that the unique size, location (near New York City) and bargaining power of the named plaintiffs make it much easier for them to deal directly with individual copyright owners, if defendant is out of business,[12] than it would be for the smaller theaters located at substantial distances from New York. Defendant also desired discovery to show a conflict of interest between Westbury's principals, who are Broadway producers of musicals licensed by defendant, and the rest of the class of licensed theaters, see note 6 *supra*, and to establish the relationship between plaintiff Chateau de Ville and plaintiffs' counsel. See note 7 *supra*. All of the above is highly relevant to the question whether the named plaintiffs will fairly and adequately represent the class.

While the management of discovery is committed to the sound discretion of the trial court, *Lewis v. Texaco, Inc.*, 527 F.2d 921, 926 (2d Cir. 1975), we are required to determine whether that discretion was abused. Although the trial court must determine if an action is to be maintained as a class action "[a]s soon as practicable after the commencement" of the action, Fed.R. Civ.P. 23(c)(1), this does not mandate precipitate action. The court should defer dicision on certification pending discovery if the existing record is inadequate for resolving the relevant issues. In particular, "discovery may be necessary in order to . . . appraise the adequacy of representation." Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 41 (1967). See generally *Cruz v. Estelle*, 497 F.2d 496, 499 (5th Cir. 1974); *Huff v. N.D. Cass Company of Alabama*, 485 F.2d 710, 712–13 (5th Cir. 1973) (en banc); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held.

We believe that in this case the district judge acted precipitately in deciding the class certification motion without fuller development of the facts on the issues concerning fairness and adequacy of representation. The serious issues thus raised were either not discussed at all in the district court opinion or were disposed of too summarily.[13] These issues are important and are difficult to decide. We express no view on how they should be resolved, nor on any others relevant to class certification,[14] other

---

**12.** The complaint requests, inter alia, dissolution of Tams-Witmark.

**13.** We refer to the district court's opinion, dated March 7, 1977. The later order denying defendants' motion for reconsideration contained no discussion.

**14.** In particular, we need not decide now appellant's claim that, even if class action treatment is appropriate here, the district court erred in certifying the class under subsection (b)(2) of Rule 23 and, in any event, under *both* subsections (b)(2) and (b)(3). While an action may meet the requirements of both 23(b)(2) and 23(b)(3), see, e. g., *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 252 53 (3d Cir.),

cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); 3B Moore's Federal Practice ' 23.31[2], at 23–261 (2d ed. 1978); C. Wright, Law of Federal Courts 350 (3d ed. 1976), unless there is more than one class involved in the action, see Moore's Federal Practice, *supra*, at 23-261 n. 1, major problems can arise from certification under more than one subsection where different procedural consequences attach depending upon the subsection used. Particularly, we make reference to the fact that under (b)(3) class members must be given an opportunity to opt out of the class and avoid the binding effect of the judgment, whereas that is not the case under (b)(2). Fed. R.Civ.P. 23(c)(2).

than that they deserve more detailed consideration than was possible without further discovery.

The order of the district court is therefore reversed and the case is remanded for further proceedings consistent with this opinion.